IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL TROY WEBB, and<br>KIMBERLY ROSAMOND<br>FANSLAU,<br><br>Defendants. | CR 19-121-BLG-SPW-1<br><br>ORDER |

Before the Court is Defendant Webb's Motion to Suppress, joined by Defendant Fanslau. (Docs. 35 & 49). Webb supplemented the initial motion on September 1, 2020, and once again Fanslau joined. (Doc 62 & 64). All together, Webb argues that drug evidence obtained pursuant to a cell site location information (CSLI) warrant and a subsequent search warrant should be suppressed. Defendants allege the CSLI warrant lacked particularity and was insufficiently supported by probable cause, and that the issuing magistrate lacked jurisdiction over the CSLI data. Defendants then argue that the subsequent search warrant for their room at the Red Lion Hotel in Billings, Montana, is invalid as fruit of the poisonous tree of the CSLI warrant and that the subsequent warrant lacked probable cause and particularity. The Court held a hearing on the motions on

1

October 30, 2020. After considering the testimony presented and the arguments in the briefing, the Court denies the motion for the following reasons.

I. **Facts**

On May 17, 2019, Missoula County Sheriff's Office Detective Shawn Williams (who was also cross-deputized as a DEA Drug Task Force officer) learned from other law enforcement officers of a potential drug trafficking operation involving Webb and Fanslau. Those officers were relaying information they learned from two individual sources of information (SOIs). The identities of the SOIs were unknown to Williams beyond their relationship to Webb. SOI 1 was described as having seen Webb with approximately six pounds of methamphetamine and three pounds of heroin. SOI 1 also believed that Webb intended to distribute those drugs. SOI 1 had been contacting Webb by cell phone and provided Webb's cell number to law enforcement. (Doc. 36-1 at 5). Williams learned of this source from Missoula Police Officer Brandon O'Dell, who informed Williams that SOI 1 had provided reliable and corroborated information to O'Dell in the past on other unrelated interdictions. (Doc. 36-1 at 5).

SOI 2, whom Williams learned about through Deputy U.S. Marshall Meinhold and Probation and Parole Officer Jake Miller, was apparently in a personal and intimate relationship with Webb. SOI 2 stated that they saw Webb with 11 pounds of methamphetamine. SOI 2 further stated that Webb was

traveling with Fanslau through Montana selling the drugs and that Webb was armed. (Doc. 36-2 at 4). After confirming with the other officers that the two sources were different individuals, Williams applied for a CSLI data warrant from Judge John Larson of Montana's Fourth Judicial District Court. Judge Larson granted the warrant, authorizing law enforcement to collect "ping" information from Webb's cell phone records, thereby revealing his locations and movements within the state.

In his affidavit, Williams included the information about the SOIs' connections to Webb and his own law enforcement experience. (Doc. 36-1 at 5). Williams did not include why the SOIs chose to give information, no specifics of their past reliability, or information regarding any connections between the SOIs and Fanslau. He testified that he has never included a source's criminal record when applying for a warrant.

Williams testified at the hearing that he had worked closely with Officer O'Dell and Deputy Meinhold previously and trusted their sound judgment regarding sources and reliability of information on criminal activity. Williams had worked with Meinhold frequently and found him to be a reliable and capable officer. Williams also confirmed Webb's criminal history and outstanding warrants prior to authoring the application/affidavit. Williams knew that Webb's

cell number was not from Montana and did not know where Webb or Fanslau resided.

Judge Larson granted the CSLI warrant. Upon executing the warrant, law enforcement used the data to determine that Webb was in Billings. Based on that information, they conducted a search of hotel parking lots on the west end of Billings and found a silver 2019 Ford Explorer with Nebraska plates, matching their description of Webb's vehicle, in the Red Lion Hotel parking lot. (Doc. 36-2 at 5). An administrative subpoena served upon the hotel revealed that Fanslau was renting room #2007. (Doc. 36-2 at 5). DEA Task Force Officer Grant Morrison applied for a no-knock search warrant for the room using this information. Morrison applied for a no-knock warrant believing it was necessary due to Webb's active arrest warrant and given law enforcement's concerns due to the suspected presence of weapons and drugs. (Doc. 36-2 at 5). According to Defendant Webb's briefing, the search revealed a quantity of drugs including methamphetamine and heroin and a firearm. Webb and Fanslau were in the room at the time of the search and were taken into custody.

Further specific facts will be incorporated as necessary below.

## II.   Standard of review

On a motion to suppress, the Ninth Circuit reviews legal conclusions de novo and factual findings for clear error. *United States v. Basher*, 629 F.3d 1161, 1167 (9th Cir. 2011).

## III. Discussion

Webb argues that the CSLI warrant was overbroad and supported by insufficiently corroborated hearsay information. Webb additionally challenges the jurisdictional authority of the issuing judge. According to Webb, because the CSLI warrant allowed law enforcement to track Webb continuously and to all places he had his cell phone with him, it is a general warrant and lacks the necessary particularity. Defendants appear to argue that the application should have specified the places where law enforcement would track Webb's information and should have been limited to a more specific period of time, rather than the 30 days requested in the application. Defendants further argue that the informant information is not sufficiently corroborated and as such cannot form the probable cause necessary for the warrant. Finally, Defendants assert that the issuing judge did not have jurisdictional authority over the CSLI because the location data to be searched was stored with Verizon Wireless in New Jersey and not within the judge's geographical jurisdiction.

This Court agrees in part and disagrees in part and will explain why in turn. The Court notes that review of the application/affidavit is not *de novo*. *United*

5

*States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006). To that end, the issuing magistrate's determination of probable cause should be "given great deference." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 236 and *Spinelli v. United States*, 393 U.S. 410, 419).

A. *The CSLI warrant described the object to be searched and affiant's basis of information with sufficient particularity.*

The Court finds that the warrant was not overbroad and particularly described the object of the search. The warrant application requests the real-time location information from the phone number (916) 708-4642 for thirty days. The application lays out the reason for the requested type of surveillance and the purpose of the warrant. Under *Carpenter v. United States*, collection of CSLI data is a search that requires a warrant under the Fourth Amendment. 138 S. Ct. 2206, 2223 (2018). Webb's argument that the warrant is merely exploratory, however, is unconvincing, given the nature of CSLI data. To hold that a CSLI warrant must describe with more specificity the places where the information sought is located—the cell tower "pings" from a mobile device—would require law enforcement to include in the warrant application the very information they seek, i.e., Defendant's location. The determination by the issuing magistrate that the application provided sufficient detail supported by probable cause should not be disturbed. For that reason, the Court denies this basis for suppression.

B. *The affiant provided ample detail to allow Judge Larson to evaluate the reliability of the sources of information and their statements.*

Hearsay information, if it is reliable and corroborated—as it is in this instance—is admissible as the basis for a warrant application. Information provided in a warrant application need not be based solely on an officer's personal observation; the officer may rely on information supplied by another person. *United States v. Bishop*, 264 F.3d 919, 924 (9th Cir. 2004). But information supplied by an informant must have sufficient indicia of reliability before it can contribute to an officer's reasonable suspicion. *Navarette v. California*, 134 S.Ct. 1683, 1688 (2014). Multiple factors bear on the reliability of information supplied by an informant. *See Alabama v. White*, 496 U.S. 325, 330 (1990) (independent police corroboration of information); *Florida v. J.L.*, 529 U.S. 266, 271 (2000) (anonymity of informant); *United States v. Terry-Crespo*, 356 F.3d 1170, 1176 (9th Cir. 2004) (exigent circumstances); *Terry-Crespo*, 356 F.3d at 1176-1177 (whether informant's knowledge was first-hand or second-hand); *Terry-Crespo*, 356 F.3d at 1177 (whether informant's report was contemporaneous with suspected criminal activity).

Here, two independent sources provided consistent information about Webb's ongoing drug trafficking. Each source claimed to have first-hand knowledge of this activity, and SOI 2 was apparently in a close relationship with Webb. Officer Williams confirmed that the sources were separate people. The

7

sources each reported seeing large quantities of drugs and SOI 2 reported seeing Webb engage in a drug transaction. Deputy Meinhold, an officer that Williams found trustworthy from past experience, vouched for each source. Under the totality of the circumstances, this information had multiple factors weighing toward its credibility and allowed the issuing judge to determine that there was probable cause. Therefore, the Court denies this basis for suppression.

C. *The CSLI warrant failed to comply with the jurisdictional strictures of Montana law and the Stored Communications Act.*

CSLI warrants authorized by the Stored Communications Act must comply with state warrant procedures. However, Montana does not authorize such extra-territorial search warrants. The Stored Communications Act requires providers of electronic communication services to disclose the contents of those communications pursuant to warrants issued under either the Federal Rules of Criminal Procedure or by a state court of competent jurisdiction under state procedures. 18 U.S.C. §2703(a). Here, Webb asserts that Montana law does not grant jurisdiction to state courts for the instant warrant and that the issuing court was not one of competent jurisdiction contemplated by the Stored Communication Act.

Webb asserts that the CSLI warrant was facially invalid because it was issued by a Montana State District Court Judge who lacked jurisdiction to authorize the search and seizure of property located in New Jersey (the cell site

information held by Verizon Wireless). In Webb's view, Montana Code Annotated § 46-5-605(3)(a) does not authorize such warrants for individuals, like Webb, who are not Montana residents. The statute reads:

> "A warrant or investigative subpoena under [Montana Code Annotated §] 46-5-602[1] may be served only on a provider of an electronic communication that is a domestic entity or a company or entity otherwise doing business in this state under a contract or a terms of service agreement with a resident of this state if any part of that contract or agreement is to be performed in this state."

Under the plain language of the statute, the company must be operating or doing business in Montana under a contract or terms of service agreement with at least one Montana resident. Webb is not a resident of Montana nor does he have a Montana phone number.

Next, Webb asserts that jurisdiction, as contemplated by the Stored Communications Act, was not met because Montana law does not authorize a district court judge to issue warrants for property outside of the state. Webb relies on Mont. Code Ann. § 46-5-220 (2) in support, which reads, a "search warrant may be issued by: (a) a city or municipal court judge or justice of the peace within the judge's geographical jurisdiction; or (b) a district court judge within the state." Webb believes that the modifying language "within the state" is a restriction on a

---

[1] Mont. Code Ann. 46-5-602 reads: "A governmental entity may only require disclosure by a provider of an electronic communication service of the contents of an electronic communication stored, held, or maintained by that service pursuant to a search warrant or investigative subpoena issued by a court upon a finding of probable cause pursuant to Title 46, chapter 5, part 2, or Title 46, chapter 4, part 3."

district court judge's authority rather than a distinction between the broad powers of district court judges compared to the more limited jurisdiction of municipal and justice court judges. *See* 1991 Commission Comments to Mont. Code Ann. § 46-5-220 ("Montana's 1987 code authorized any judge to issue a warrant without limitation and also permitted any person to apply for a warrant [. . .] This statute changes the 1987 code in two ways [. . .] this statute limits the authority of Municipal Court Judges or Justices of the Peace to issue search warrants outside their jurisdiction. This limitation reflects the general jurisdiction of these judges. The statute allows a District Court Judge to order a search and seizure anywhere in the state.") While Webb inaccurately defines the modifying language in the statue, Webb correctly states the broader point: Montana Code Annotated § 46-5-220 (2) does not authorize extra-territorial search warrants.

Here, the CSLI warrant authorizes the search of Webb's cell phone location information, which was stored in New Jersey. Law enforcement knew that Webb was not a Montana resident and did not have a Montana phone number. Merely because the cell phone for which law enforcement seek the location information is presently located within the state does not mean the data to be searched is. Unlike in *United States v. Fregia*, CR 18-58-BLG-SPW-1 (D. Mont. 2018), where this Court approved of a CSLI warrant for a Montana resident, Webb is not a Montana resident and that distinction is critical as it relates to the statutory authorization. If

10

law enforcement seeks CSLI data, they must comply with the Stored Communications Act and either seek a federal warrant or a valid state warrant. The state warrant here did not comply with Montana's jurisdictional limitations. Therefore, the warrant is invalid for lack of jurisdiction.

*D. Suppression, however, is not the appropriate remedy under the good-faith exception to the exclusionary rule.*

Although the Court agrees with Webb's jurisdictional argument, exclusion and suppression are inappropriate remedies. The good-faith exception to the exclusionary rule applies when "a reasonably well-trained officer would [not] have known that the search was illegal in light of all the circumstances." *United States v. Henderson*, 906 F.3d 1109, 1118 (9th Cir. 2018) (quoting *Herring v. United States*, 555 U.S. 135, 145 (2009)); see also *United States v. Elmore*, 917 F.3d 1068, 1077 (9th Cir. 2019) (listing the narrow circumstances in which an officer would know of a search's illegality). The exclusionary rule was crafted to curb police rather than judicial misconduct. *Herring*, 555 U.S. at 145. The application of the good faith exception depends on the executing officer's objectively reasonable belief that there was a valid warrant. *Henderson*, 906 F.3d at 1118. The Ninth Circuit has unequivocally held that the good faith exception applies "where a warrant is void because of a magistrate judge's jurisdictional violation, so long as the executing officers had an objectively reasonable belief that the warrant was valid." *Id.* at 1119.

"[A] warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Id.* at 1120 (*citing United States v. Leon*, 468 U.S. 897, 922 (1984)). Defendants have not made a *Franks* challenge that the affiant misled the magistrate using statements the affiant knew were false or that he recklessly disregarded the truth of these statements. As a result, for suppression to be appropriate, the warrant must have been so lacking or obviously flawed that no reasonably well-trained officer would rely on it or presume the warrant to be valid. *Leon*, 468 U.S. at 923.

Williams testified that CSLI warrants are routine. Williams stated that he believed Webb was in Montana and traveling within Montana when he authored the application. He also stated that, in his experience, it is not unusual for drug distributors to have inconsistent home addresses or residences. In the Court's view, it is objectively reasonable to believe that while the data is stored outside of Montana, it is generated by a cell phone within the state. This testimony demonstrates that Williams and the other task force officers objectively believed that the warrant was valid and that they were authorized to obtain CSLI data for individuals passing through Montana and committing crimes in Montana. The Court cannot say that this belief was unreasonable. There is no evidence that the officers acted in bad faith. *Compare to Henderson*, 906 F.3d at 1119 ("To the extent a mistake was made in issuing the warrant, it was made by the magistrate

judge, not by the executing officers.") Therefore, even if the warrant is void due to the issuing judge's lack of jurisdiction, suppression would not be the appropriate remedy due to the good faith objection.

*E. The Red Lion search warrant is likewise valid because it was supported by information obtained during the investigation such that a magistrate's finding of probable cause should not be disturbed.*

Although the Court determined that the CSLI warrant was jurisdictionally deficient, the Court found that the information obtained should not be suppressed due to the good faith exception. Webb challenges the Red Lion search warrant obtained using the CSLI data, the initial SOI information, and further information from SOI 2 relaying that Webb was armed, arguing that the information was uncorroborated hearsay and the CSLI data was issued unlawfully. The good faith exception that saves the CSLI warrant likewise saves the subsequent warrant. Even if it did not, the subsequent warrant is supported by independent facts and the Court will not overturn the issuing magistrate's decision to grant the warrant. To start, the Court directs attention to section III.A, *supra*, determining that the information from the SOIs formed a sufficient basis for the CSLI warrant. This analysis likewise applies to the Red Lion search warrant. The same information was cited in the Red Lion search warrant application and provides the same probable cause for this second search warrant as for the CSLI warrant. The Court reiterates that the issuing magistrate's determination of probable cause shall be

given great deference. *Gourde*, 440 F.3d at 1069. Here, information obtained from reliable sources of information and the administrative subpoena served upon the Red Lion Hotel showed that Fanslau, a known associate of Webb and alleged travel partner in the drug distribution scheme, was staying in room #2007 at the Red Lion Hotel. This information is not so insufficient that an issuing judge could not reasonably find probable cause to issue the warrant. Furthermore, Defendants do not mount a *Franks* challenge alleging that the applying officer, TFO Morrison, intentionally or recklessly misled the issuing judge. As above, Defendants must therefore show that belief in the warrant's validity was objectively unreasonable. Defendants fail to do so. Officers are entitled to rely on a magistrate's determination as they did in this instance. There is no independent challenge to the jurisdiction of the warrant, as there was with the CSLI warrant. Here, the property to be searched was clearly within the jurisdiction of the judge and the officers. Because the warrant is not so facially invalid as to render official belief unreasonable, even if the warrant failed, suppression would not be the appropriate remedy due to the application of the good faith exception.

## IV. Conclusion

For the reasons above, Defendants have not met their burden in challenging the CSLI search warrant. Defendants' claims against the subsequent search warrant in Billings that are predicated on their claims against the CSLI warrant

necessarily fail as well. Defendants likewise have not met their burden in their independent challenges to the Red Lion search warrant. Therefore, Defendants' Motions (Docs. 35 and 49) are DENIED.

DATED this 4th day of January, 2021.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge